## McClurkan *versus* Thompson *et al.*

1. C. being much in debt, gave to B. a mortgage, to be sold and his creditors paid at 50 per cent. The mortgage could not be sold, and with the consent of the creditors it was assigned to S. their attorney for their use. The land bound was sold under the mortgage, bought by S. for the same use and rented by him. He then sold to T., one of the creditors, the consideration being the payment of a preferred claim against C., T.'s own debt *in full*, and the balance in three notes of T., payable in one, two and three years, with an agreement by deed with T. that he would reconvey to S. in one year upon payment of the above consideration. T. received the rent, made no improvements nor exercised any other act of ownership, nor paid his notes. Ten years afterwards S. sold the land to M. to hold in trust for the creditors of C. In ejectment by M. against T., the court below held the transaction between S. and T. a conditional sale, and nonsuited M. *Held,* to be error; the facts raising the question for the jury whether the transaction was a mortgage.

2. The deed to T. and his agreement under the facts, were but one instrument, and under the general rule would constitute a mortgage.

3. If considered as a conditional sale, the facts of the deferred payments, and the continued receipt of the rent showing that the reconveyance was not limited to one year would produce the same result.

October 3d and 4th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county:* No. 46, of October and November Term 1870.

19 P. F. SMITH—20

[McClurkan *v.* Thompson.]

This was an action of ejectment for a lot of ground fronting on the "Diamond," in the city of Pittsburg, brought March 13th 1868, by Samuel McClurkan against Moses B. Thompson and others.

The premises were originally the property of one McGonigle and by him sold to Cyrus Black, part of the purchase-money remaining unpaid and secured on the premises. There were afterwards judgments recovered against Cyrus Black, one May 20th 1851, by James Wells, for $1818.24; and another January 14th 1852, by Marcus Black his brother, for $16,000. George S. Selden, Esq., an attorney at law, was employed to collect a number of claims against Cyrus Black, one of these claims belonging to Thompson the defendant. Other creditors were pressing Black, and to these he confessed judgments before Mr. Selden had obtained judgment for his clients. Selden then threatened to attack Marcus Black's judgment for fraud. This brought about negotiations by which Cyrus Black proposed to pay fifty cents in the dollar on the claims of Mr. Selden's clients. The proposition was accepted, and in order to effectuate the arrangement, Cyrus Black executed a mortgage on the premises to Marcus Black, for $11,800.

This mortgage was assigned to Selden for the creditors, but failing to sell it, he borrowed money from Kramer & Rahm to pay the McGonigle and Wells liens, and took an assignment of these liens to himself. He then had the land sold under the mortgage and bought it himself for the creditors, for $7000. Being unable to sell the land without sacrifice, and after some negotiation with Thompson, he agreed that the property should be struck down at auction to Thompson for $4000—Thompson to pay the amount due Kramer & Rahm, to have his own debt paid in full and to give three notes, payable in one, two and three years, amounting in all to $559.88, with the understanding that Selden should have the privilege of having a reconveyance of the property for the creditors in one year, upon paying $4897, the aggregate amount with interest which was the consideration for the conveyance to Thompson. In pursuance of this arrangement Selden on the 20th May 1857, conveyed to Thompson, $4000 being the consideration stated in the deed, and on the 28th Thompson and Selden entered into an agreement:

"That the said Thompson hath and by these presents doth grant, bargain and sell to said George S. Selden, his heirs and assigns, that certain lot of ground at the corner of the Diamond, &c., * * * being property late of C. Black, for $4897 in one year from this date without interest, and two hundred more provided he shall realize that sum on and above the above $4897 on a re-sale to be made within one year, said Thompson to execute and deliver deed in fee simple therefor upon the payment of said sums or giving satisfactory security therefor, of which said Thomp-

[McClurkan v. Thompson.]

son is to be the judge, and said Thompson agrees to receive his own paper in payment, whether due or not."

On the 20th of December 1867, Selden conveyed the premises to the plaintiff, the consideration stated in the deed being $500. Both the deeds to the defendant and the plaintiff were ordinary deeds of bargain and sale with special warranty. Nothing appeared in them showing that there was any trust or that they were defeasible. The plaintiff claimed under the deed to him as standing in the place of Selden as trustee for Cyrus Black's creditors, alleging that the deed to the defendant with the agreement was a mortgage, and, having tendered the amount mentioned in the agreement to the defendant, he claimed that he was entitled to recover in ejectment.

The other facts in the case are so fully stated in the opinion of Mr. Justice Read, that no further reference to them is necessary.

After the plaintiff's evidence had been received, the court (Kirkpatrick, J.) ordered a nonsuit.

The plaintiff removed the record to the Supreme Court and assigned this order for error.

*N. P. Fetterman* and *S. A. Purviance*, for plaintiff in error.— If a deed and defeasance bear even date, or are agreed upon at the same time, they constitute a mortgage: Reitenbaugh v. Ludwick, 7 Casey 131; Wilson v. Shoenberger, Id. 295; Kerr v. Gilmore, 6 Watts 405; Brown v. Nickle, 6 Barr 390; Houser v. Lamont, 5 P. F. Smith 311. It is only when the deed and defeasance are executed and delivered at different times, that it becomes the subject of inquiry, whether it is a resale. An express and positive stipulation against its being a mortgage will not make it so: Colwell v. Woods, 3 Watts 188; Kerr v. Gilmore, 6 Id. 405. An equity of redemption cannot be destroyed, being against the policy of the law: Rankin v. Mortimere, 7 Watts 372; Hiester v. Maderia, 3 W. & S. 384; Colwell v. Woods, 3 Watts 188; Harper's Appeal, 14 P. F. Smith 315. The court should have left it to the jury to determine its character: Hiester v. Maderia, 3 W. & S. 384; Kunkle v. Wolfersberger, 6 Watts 130; Wharf v. Howell, 5 Binn. 499.

*S. H. Geyer* and *G. Shiras, Jr.*, for defendant in error.—It is competent for parties to agree upon a conditional sale. The relation of the parties must be that of borrower and lender to constitute a mortgage. There should be a surviving debt or obligation, as between the parties, which the alleged mortgagee could have enforced. The rule preventing the conversion of a security into a sale is for the protection of the needy debtor against the rapacity of a merciless creditor. This never can be the case where the transaction partakes not of the character of a

[McClurkan *v.* Thompson.]

loan, and the sale is for a fair price: Spering's Appeal, 10 P. F. Smith 210; Williams *v.* Owen, 4 Mylne & Craig 303; Turner *v.* Kerr, 44 Missouri 429; Conway *v.* Alexander, 7 Cranch 218; Flagg *v.* Mann, 14 Pick. 467; Holmes *v.* Fish, 9 Missouri 205; Mann *v.* Moody, 26 Mississippi 184; Glover *v.* Payne, 19 Wendell 518; Todd *v.* Campbell, 8 Casey 250.

The opinion of the court was delivered, May 13th 1872, by

READ, J.—Cyrus Black was largely indebted to several persons, amongst others to parties who were represented by George S. Selden, and proposed to pay fifty cents in the dollar in full of the claims Selden was employed to collect, and of other creditors who would accept of it, which was agreed to, and Black, on the 1st July 1853, executed and delivered to Marcus Black, his brother, a mortgage for $11,800 with prospective interest, on the property in dispute in this case. The mortgage to be sold and the proceeds applied to the payment in full of the Wells judgment, and a balance of the purchase-money on the property due McGonigle's heirs; fifty per cent. in full of the claims of the creditors that agreed to accept, and the balance to Selden for his services. Kramer & Rahm, with whom negotiations had been entered into to buy the mortgage, declined purchasing it, and Cyrus Black then proposed, if the creditors would take the mortgage as payment, in the same proportion, in full of their claims, he would have it assigned to them. The proposition was accepted, and Marcus Black, mortgagee, at the instance of Cyrus Black, on the 8th August 1853 assigned the mortgage to George S. Selden in trust for said creditors. Selden failed to sell it, and brought suit in trust for creditors, obtained judgment, and on the 24th July 1854 had the property sold on a levari facias, and purchased it for $7000 at the sheriff's sale for the benefit of creditors, and a sheriff's deed was executed and delivered to him. Selden had, before the sale, borrowed money from Kramer & Rahm, with which he had paid the Wells judgment and McGonigle's claim, and had them assigned to himself.

The legal title is thus traced into Mr. Selden, who was simply a trustee for creditors, according to the terms of the assignment to him by Marcus Black. Kramer & Rahm's interest in it consisted of the moneys lent Selden to pay off the two preferences. In March 1855 Selden leased the property to James Mills for one year, and afterwards tried to sell it, and Mills's offer of $10,500, $500 cash and $1000 per year, he declined, because he required a cash payment sufficient to pay Kramer & Rahm the money they had advanced and interest. In 1857, Kramer & Rahm notified him they must have their money, and in the spring of that year Selden, with the consent of creditors, offered the property for sale at public auction, and M. B. Thompson, the defendant in

error, was present, but the bidding was not satisfactory, and it was again advertised for sale by order of trustee (Selden), on Tuesday evening, May 19th, at public auction, in pursuance of adjournment. M. B. Thompson bid $4000, and wanted Selden to let him have it at that price, but Selden refused, and informed him that he could not let the property be sacrificed at that, and that he could not, in justice to the creditors, let it be knocked down for less than $7000, unless some arrangement could be made by which he, Selden, could have the privilege of paying him his money with interest within a year, and receive a conveyance of the property. With that understanding the property was knocked down to Thompson for $4000.

Selden prepared the deed from himself and wife to Thompson, which was dated May 20th 1857, and acknowledged the 23d May, and also the agreement between him and Thompson, dated the 28th May 1857, and the deed to Thompson, and the agreement by Thompson to reconvey, were mutually delivered on the same day. The sum of $4897, mentioned in the agreement to be paid in one year, with interest, was made up of cash advanced to pay Kramer & Rahm with 10 per cent. interest for one year, and of Thompson's claim in full, and the three notes amounting to $559.88, which were never paid by Thompson.

"Shortly after this," says Selden, "Mills, who had been all along the tenant, called on me with reference to whom he should pay his rent. I communicated to him in general terms my arrangements, and told him to pay the rent to Mr. Thompson, and Thompson and I would settle that. Then one day I met Thompson, and we talked about that rent. I said he could collect that rent, and we could settle that without any difficulty." "The rents to be collected by Mr. Thompson were to be settled between him and myself, as a credit on this agreement."

Mr. Mills paid the rents regularly to Mr. Thompson from 1st June 1857 to 1869, amounting to $9981.25. Mr. Selden left Pittsburg in 1861, and on the 20th December 1867 he and his wife executed and delivered a deed for this property to Samuel McClurkan, acknowledged the same day in Philadelphia, and on the 23d of the same month the agreement of the 28th December 1857 was proved and recorded in Allegheny county. "At the time of the conveyance to McClurkan," says Selden, "and before I informed him of the character in which I held the property; that I held it in trust for creditors, of whom I furnished him a list, same as already given in evidence, and he agreed to carry out the trust, which I informed him I held in the property. I was not living here, and could not attend to it myself, and was therefore desirous of transferring the trust to other hands." Being cross-examined, he said: "It was my understanding and agreement with McClurkan to substitute him in my stead, in that property

in the Diamond, of which the paper of May 28th is the evidence;" and being recalled, he said : " The paper of May 28th 1857, I regarded as the evidence · of my title as trustee of that property." McClurkan was the owner of Pennock Mitchell & Co.'s claim.

In February 1868, McClurkan tendered $4550 and Thompson's three notes to Thompson, and demanded a deed for the property to himself. Thompson refused to receive the money and notes, and to execute any conveyance. " He told me," says McClurkan, " he would not give up the property, and would law until I was tired."

From these facts, it is clear that the deed to Thompson of the 20th May, and the defeasance of the 28th May, were parts of one transaction, and the same rule is to be applied to them as if both had been dated and executed at the same time as well as delivered on the same day. The deed and defeasance make in fact but one instrument, and the general rule undoubtedly is that it is a mortgage. " Whenever there is in fact an advance of money to be returned within a specified time, upon the security of an absolute conveyance, the law converts it into a mortgage, whatever may be the form adopted, or whatever may be the understanding of the parties. This is grounded on a policy of long standing in courts of equity, and in this state, of law acting upon principles of equity :" per Sharswood, J., 14 P. F. Smith 320.

Selden was a trustee for creditors, and Thompson knew it and all the facts and circumstances relating to his title, being one of the creditors who had accepted the 50 per cent. of his claim. The real consideration of the deed was the advance of money to pay Kramer & Rahm, being the cash payment with 10 per cent. interest for one year, the payment of Thompson's claim in full, and three notes payable in one, two and three years. Thompson was to receive the rents to be credited by Thompson on the $4987 on the agreement. The property, by the witnesses, was said to be worth $7000 in 1857.

Mr. Thompson received the rents, but never improved the property, never offered it for sale, or exercised any other act of ownership over it, and in 1867 was paid in full by the application of the rents according to law.

It presents certainly a very strong case for considering this a mortgage, and if it was, then the plaintiff was entitled to recover, having tendered the full amount of the mortgage-money with the three notes, and supposing the rents only to have paid the interest as it fell due. If the rents paid the full amount of principal and interest, it is not intended to say the tender of the principal was necessary.

We are inclined to consider it a mortgage, and it is certain this question should have been submitted to the jury.

[McClurkan v. Thompson.]

If considered as a conditional sale, as my brother Agnew suggests, this same state of facts would produce the same result as the deferred payments of one, two and three years, and the continued receipts of the rents show the reconveyance was not limited to one year.

Judgment reversed, and *venire de novo* awarded.